Good morning. My name is William Brammer. I am here representing TexAZ Star Turbines, Inc., the appellant. I would like to reserve four minutes, if I may, if I can manage to do that for my rebuttal. Okay, what's your call? May I proceed? Yes, you may, counsel. Thank you. The district court committed clear error by not getting right the Texas law. If you will look to ER-042, this is essentially the court's ruling on the motion to dismiss in February of 2021. And the basis of the court's ruling is unclear because there is no law cited to support it, but it says, beginning at line 10, thus it appears that the contract entered 15 years after Texas, Inc. was terminated is not valid, citing nothing to support that. Now, the... Let me ask a basic question. Sure. Texas, with an S, Star Turbines, was it dissolved? It was administratively forfeited, as I understand it, for not paying its state fees. So I'm looking at Article 7.12 F1E of the Texas Business Corporation Act, and it indicates that if it has been administratively dissolved for nonpayment of franchise taxes, or forfeited, then it's dissolved under subsection E. So do you agree that it was dissolved pursuant to the statute? That's my assumption, yes. So if you agree that Texas, with an S, was dissolved, how does Texas, with a Z, who is an assignee, have any standing to sue? Because it was assigned a contract that was made by Texas, with an S, and the contract that was signed by Texas, with an S, with the appellee, was perfectly legitimate. But if Texas, with an S, was dissolved at the time that it entered into that contract, it's not an entity. It would be like a dead person entering into a contract. Well, that's not what the Texas law says. The Texas law in two places, most recently in 2019, in the case of Transamerica and Braze Woods, 580 Southwest 2nd, 733 at 737, says the law does not expressly declare that contracts made by a corporation whose right to do business has been forfeited are void. That's why I asked if it was dissolved. There's a difference between forfeiture and being dissolved. I'm not sure that there's a difference, because the record doesn't disclose one way or the other what happened here. The forfeiture is shown. This is ER 073. It says that this is a printout from the Texas Secretary of State. It says that on February 18, 1998, there was a tax forfeiture. And the entity status is forfeited existence. So that sounds to me like it hasn't been dissolved, so I erroneously answered your question previously. So the statute in Texas, 7.12 F1E, indicates that a business that was forfeited for non-payment of taxes is dissolved. So now you're saying you don't know if it was dissolved? There's nothing in the record that suggests that, Your Honor. Other than the Texas statute? That statute says whatever it says, and I can't argue with that. All I can look at is the law that the state of Texas has developed, which says that a corporation that has been forfeited may enter into contracts. And the reason for that appears to be, as stated in the previous Rosamigo's case, which is 138 Southwest 2nd, 789, as found in the briefing, says that the oil company could have made valid contracts because the law does not expressly declare, this is at page 800 of 138 Southwest 2nd, does not expressly declare that contracts made by a corporation whose rights to do business have been forfeited are void. Nor does the law declare that the business transacted during the time of such forfeiture is void. It goes on to say the only right or privilege taken away from such corporation by the forfeiture is its right to do business by the Secretary of State, was its right to sue and defend in the courts of this state. So, counsel, it seems like you can see at least the one thing that's clear about Texas law, that if a corporation is forfeited, they lack the capacity to sue or defend in Texas courts. That's correct. You agree with that? I do. So what do we do with that piece of law? Do we apply Texas law? Well, we weren't in the courts of Texas. We were in the courts of Arizona. And my client is not the corporation that's forfeited. My client bought or was assigned the record. It doesn't tell us how it got the contract, but it was assigned the contract that was made. So your argument is that that piece of Texas law doesn't apply either to federal courts in Arizona or to your client in particular? Both. Was this issue litigated in the district court? I'm sorry? Was this issue litigated in district court, the capacity to sue? I don't believe so. I read you the part of the court's order that applies. I'm sorry. I've got it covered up here. Well, let me put it this way. Would you want us to remand this case to determine that question? Absolutely. I think that the district court needs to have all the applicable law in front of it and make a decision that then can be reviewed by this court. The district court didn't make any decision on the law of Texas because it didn't have it before it at the time that it decided the initial order on the motion to dismiss. It did have it on the motion for reconsideration, but it said, well, you didn't give that to me earlier, therefore I'm not going to consider it. And the reason, of course, as we argued in our briefs, that we could not provide that law to the district court on the motion to dismiss was because the appellee did not follow Rule 7 and state the basis and authority for its claim. All it advanced was that my client had been administratively forfeited and therefore had no rights. Unfortunately, there's Texas law to the contrary, and the district court never grappled with that. Well, there seems to be two Texas laws and sort of a conflict because the subsection that Judge Schreier has cited to you defines a dissolved corporation as one that has been forfeited. So under that definition, just this fact that your client with the Z, or not your client, but the predecessor with the Z, was forfeited, we would understand it to have then been dissolved under that subsection. On the other hand, another part of the Texas code says you're forfeited, you can still contract, but you have to apply for reinstatement within a three-year period or something like that, which would mean you weren't automatically dissolved with the forfeiture because you're not dissolved. You can contract and you can apply for reinstatement of your corporate status. So it seems to me there's an apparent conflict in Texas law. What do we do about that? I think you let the district court grapple with that and decide what happens. I don't know that it's up to this court in the first instance to make decisions that the district court should have made. And I think returning this matter to the district court to determine whether or not Texas law permits or precludes this action is appropriate. I don't know if you want me to address the motion that the text AZ entity filed in the district court for reconsideration or to extend. If you don't want me to address that, I won't. I have a different question. The appellee in their brief raised an article three standing issue. And in your brief, you didn't respond to that argument. Article three is something that can be raised at any time during litigation. It's one of the things that any court along the way has to make sure that an entity has standing. I was wondering why you didn't respond to that issue. I have no response to that, Your Honor. We just didn't respond to it. So if it goes back to the district court, will you respond at that time? Absolutely. That was an issue that the district court didn't grapple with, and I didn't think it was appropriate for this court to do so either. You understand that every court along the way has to determine if there's standing? Well, we believe that there is standing. We have a corporation that is duly formed in Arizona and is still alive, and it had a contract that was made between two entities for the sale of $800,000 worth of jet engines for which the buyer didn't pay the whole freight, and it's a simple collection action. My client has standing to bring that case in the district court and here as well. All right, counsel, you wanted to reserve four minutes, so maybe you should reserve now. Thank you. Thank you. Good morning, Your Honors. My name is Helen Santilli, and I represent the appellees, Turbine Power Technology, and Ted McIntyre. The appellees urged this court to affirm the lower court's orders denying the motions to reconsider and the motions to extend. It was not in the appellant's first original verified complaint. It was not in the appellant's first amended complaint. It was not in any of the appellant's three separate responses to three separate motions to dismiss. It was not in the response to the appellee's counsel pointing out the FAC's procedural deficiencies and providing a draft of the third motion to dismiss to counsel. It was not in response to oral arguments on the third motion dismissed because appellants stipulated to waiving the arguments. It was not until one year and five months into litigation after the district court dismissed the first submitted complaint that appellant for the first time in its procedurally deficient, untimely, 46-day-late, 19-sentence motion to reconsider that it raised for the first time the argument that it alleges supports its position that appellant can sustain this action. Specifically, the 1940 case Ross Amigos and the 2019 case Transamerica. Appellant's motion to reconsider cited to the foregoing cases to support the position, and I quote, the Texas Supreme Court has stated that the law does not expressly declare the contracts made by a corporation whose right to do business have been forfeited are void, and the contract therefore, excuse me, the corporation could therefore make valid contracts at ER 34. This was appellant's argument to support the erroneous position that Texas Star Turbines, who I'll refer to as Texas Company, is a Texas entity that was involuntarily dissolved in 1999 for its failure to pay franchise taxes pursuant to Texas law, specifically the TBCA, which this panel has cited. And for some reason it asserts that 15 years after this dissolution and without reinstatement, pursuant to Ross and Transamerica, it can somehow assign some interest in the 2013 contract to an entity that wasn't formed until sometime after 2015. The district court at ERs 11 through 12 appropriately found six specific reasons for denying the motion to reconsider. First and foremost, that Texas Company lacked capacity to transact business, so the contract was not valid, and therefore no meritorious claim could be assigned to the appellant. Counsel, was that a correct understanding of Texas law? Yes. I believe, as cited by the panel, TBCA 7.12, specifically E4, sets forth that when an entity is involuntarily dissolved for failure to pay franchise taxes, it's given 90 days to cure. If not cured, it's involuntarily—the corporate charter is forfeit. You're given 36 months to cure. If failed to cure within 36 months, the entity is involuntarily dissolved. 7.12A4 expressly says when an entity is involuntarily dissolved, it may not conduct business. If an entity cannot conduct business, how could it enter into a contract 15 years later after dissolution and assign something to an appellant sometime after 2015? But Texas law, as Transamerica says, doesn't expressly say that they can't enter contracts. Correct. It does not expressly say that. However, Ross Amigos and Transamerica are distinguishable for a variety of reasons. First and foremost, neither analyze the TBCA or the TVOC, so the law— But does either of those statutes expressly prevent corporations from contracting? Yes. TBCA 7.12A4 expressly says when an entity is involuntarily dissolved, it may not transact business. Yeah, but that's not the same thing as not being allowed to enter a contract. If you can't enter into a business, I don't see how you could enter into a contract. Further, there's case law that supports the position that involuntarily dissolved entities cannot enter into contracts. For example, in Ray Emmett, the court held that an entity like Texas Star was involuntarily dissolved, but it was reinstated, but post that three-year mark, it could not transact business because it did not have capacity to enter into the contract. So you're telling us that we should overrule Transamerica and say that the Texas court was wrong about Texas law? I don't think the court has to overrule Transamerica to come to that finding because in both Transamerica and Ross, the Transamerica and Ross attempt to use that language as a shield to defend itself from liability. In Transamerica, it was the entity that brought the action against Bracewood for failure for a variety of things, including breach of contract. After that court granted Bracewood's motion for summary judgment, it wasn't until then that Transamerica said, oh, I don't have capacity. This contract is void. You can't hold me accountable for the damages under this motion for summary judgment. So what's the distinction? The distinction is the contract was entered into post-litigation and was used as a shield instead of a defense. But that's not how we do law. Sure, but I think the biggest distinction is it doesn't look at TBCA at all. There's no reference at all to it. And again, the TBCA expressly— Sure, but I mean, you acknowledge it's trying to interpret Texas law even if it doesn't expressly say it. Sure. It's a more persuasive authority on what Texas law is than us just opining, right? Sure. I do think, though, the Arizona District Court was appropriate in affording the TBCA full faith and credit when it recognized and cited to Henry Kirby for this proposition that in Kirby, a California court was interpreting a New York contract that involved a California entity. That California entity had been dissolved for failure to pay franchise taxes. Though that contracted issue specified New York law, the New York court held that it had to afford California's laws governing administration of its entities full faith and credit. So I think in that line of reasoning, the District Court was appropriate when it found that applying the TBCA and finding an entity involuntarily dissolved could not enter into a contract and therefore assign any interest thereafter. I think what we don't know for a fact, though, is whether Texas with a Z was dissolved. I understand your question. I don't agree with that position. And again, in Emmett, the issue about capacity was raised. One of the things that Emmett argued was that since capacity wasn't raised in a verified pleading, it was waived. In that case, the District Court found that since with its motion it included the Texas Secretary of State records indicating there was a forfeiture for nonpayment of franchise taxes, that evidence alone was sufficient for that court to find that the entity was involuntarily dissolved and unable to do business. I'm trying to look at the big picture of this because I have to admit a certain lack of familiarity with Texas corporate law. So your client entered into a contract with a dissolved company and took the goods and then refused to pay. I understand your confusion. So yes, when I say my client, I refer to Turbine Power Technologies. Ted McIntyre was not a party to this contract. So yes, TPT did execute this contract. However, the underlying issue you're getting at was never litigated at the District Court level. So whether or not goods actually changed hands and the sums involved wasn't something the District Court got to litigate whatsoever. So I want to refocus this panel to the party presentation in that the issues litigated down below... I just prefaced this by saying I'm trying to understand the big picture of this and then trying to see how we might apply the law to it. We did assert in a few of our pleadings that if this was remanded back down, based on the four corners of the document itself, we would have affirmative defenses. I won't get into them because I don't think they're relevant, but the appellees do dispute some of the facts alleged in the document we're calling the 2013 Bill of Sale. Okay. Do you think there's a distinction between Article III standing and capacity to sue? I think that the capacity issue... Yeah, I think it can always be asserted. I don't think it was waived at the District Court level, so I do think that it's something the court always has to ensure that it has. Article III standing? Correct. Capacity to sue, on the other hand, is an affirmative defense that needs to be raised? I don't know if I would go that far, especially with these facts given the appellees were not made aware of the dissolution by the appellant at any point in time and had to come to that conclusion on their own. So I don't think it's something that was waived. So my question is not whether it was waived in this instance, but isn't capacity to sue something that is an affirmative defense that can be waived if it's not pled? I think there are cases that find that. I think that there are also exceptions. Like I indicated in Emmett, when the Texas Secretary of State records are attached to a pleading, it found that that was an appropriate time to raise that issue, and it wasn't waived by not putting it in an answer. But your position is, in this case, capacity to sue was raised, so it has not been waived? Correct. It has arguably been the appellant's position throughout this litigation was that this cause of action should not be sustained because the entity lacked capacity to sue and therefore could not assign something any greater than it had. I'm sorry, what was that? Capacity to sue is different than ability to contract. Correct. And to get to one of the points that you had raised, it's the Texas with a Z could not enter into business, so therefore any rights, any bundle of rights that it had, could not have been any greater when they transferred it to appellant. Right, I agree with Texas with an S did not have the capacity to sue under Texas law in Texas courts. Correct. But what did we do here? This is a federal district court in Arizona. Correct. With an assignee. So there's two different distinctions, right? Yes, yeah. I think we go back to that full faith in credit issue analyzed in Kirby in that Texas law deals with administration of Texas entities. And under Texas law, Texas company was an involuntarily dissolved entity and could not transact business. But if that's true, then if it's just a random entity and your client contracted with them, why not a different forum law apply? Why not Arizona law? Well, I think we're putting the cart before the horse. I think the first issue is what law applies to administration and dissolution of a Texas entity. And as the district court noted in the order dismissing the First Amendment complaint, it found that Kirby was appropriate because the law wherein an entity is incorporated dictates construction of an entity. So before we even get to what elements do we assert for the breach of contract, what state law is binding, we can't even get to that because we can't get past the first threshold. But why couldn't your client contract with a non-corporation? It could contract with a non-corporation. However, that's not the facts in front of this court. The 2013 bill of sale purports that the turbine power technology contracted with Texas Star Turbines. But you're saying which was dissolved at the time. Correct. So why couldn't they contract with a dissolved corporation? We have to think about the public policy ramifications of that, right? So if turbine power technology enters into a contract with an entity that under Texas law cannot sue or be sued, it would be unfair and inequitable to subject it to causes of action against it. But you entered a contract and took the benefits of the contract. It seems that equity goes the other way. I would, again, not expound too far as the appellees assert they have affirmative defenses to the allegations that are alleged in the bill of sale, including in the record return of some of those goods. And so they would argue likely that any contractual provisions were satisfied. Nonetheless, I realize the consequences here are harsh. However, when juxtaposed with the conduct of Texas companies' failure for nearly two decades to pay taxes, to adhere to Texas law, to file a doctrine with the Texas Corporation of State, Texas Secretary of State, those harsh consequences are juxtaposed with the harsh actions of Texas law. I have one last question. Why can't we separate out the assignment of the contract to this innocent corporation, Texas S, and why do we have to say that the capacity to sue goes with the contract? Because the contract that was assigned was the contract for the sale of goods. That doesn't affect whether Texas with the S is a corporation in good standing. Correct. And in responding to that, I would point the court to a case cited to by the appellant named Rushing. And I quote, Obviously an assignee cannot sue on a claim obtained from the corporation after it loses its right to do business in Texas because such a rule would encourage the assignment of claims rather than the payment of franchise taxes. End quote. This, again, would be contrary to public policy. So if you're going to enable a company to skirt all of its tax liability for two decades and then simply assign away any meritorious claims that it had, that's counter to rushing. Would you agree at least the issue of capacity to sue and whether or not that applies, the Texas law applies in Arizona courts, was not properly briefed or argued below? And shouldn't we remand it? If remanded, I would agree that supplemental briefing could be ordered. However, I believe it would be irrelevant. First, because the motion to dismiss in ER 67 footnote 3 cites the TBCA and that was the support for the motion to dismiss. And the support being that entities that are involuntarily dissolved lack capacity to sue. Therefore, there's no basis for an invalid entity. But there was no analysis of whether or not that applies in Arizona federal court. There was no analysis under Arizona law of that issue. You are correct, but I don't think that would have been the relevant legal analysis anyways. Okay. With that being said, I want to hit some bullet points in the last 38 seconds we got here. I wanted to remind the court that the district court clearly delineated the issues in denying the motion to reconsider. For example, it was filed 46 days late. It included new law that was not raised when it should have been raised earlier. Indeed, the only law raised was RAS America, excuse me, RAS Amigos and Trans America, both which were decided prior to the filing of the original verified complaint. Therefore, under the applicable Arizona 9th Circuit standards, the motion to reconsider was appropriately denied. In denying the motion to extend, the district court also clearly delineated its reasons for denying the motion to extend and therefore its order should not be overturned. I urge this court to affirm the lower court's rulings. Thank you. And to not reverse or reinstate Ted McIntyre as a defendant. All right. Thank you very much, counsel. Mr. Brammer. Thank you. If I can just address that last point first. The motion to extend was denied because the district court said that my client did not indicate how long the extension should be. The motion said, please delay the filing of an amended complaint until you decide the motion for reconsideration. So it clearly indicated how long the extension would be. And secondly, because a form of order was not filed with the court. A form of order, unfortunately, was attached to the motion. So that wasn't good practice, but the court did have before it an order. With regard to the motion for reconsideration, I think I addressed that earlier, that the reason that the law was stated earlier was because my client did not have an opportunity to know what law the appellee was urging to support its position that my client could not contract. The Texas Business Organization law about dissolution says that the corporation cannot enter into agreements regarding the purpose for which the entity was formed. There's nothing in the record to suggest what Texas with an S was formed to do and whether or not the sale of jet engines and engine parts was part of that business. I don't know, and the record doesn't tell us. The district court didn't have that before it. This court doesn't either. My client has the ability to sue in Arizona courts. This case was removed from an Arizona court to the district court, and the district court should have tried to get the law right. It didn't have it before it, apparently didn't search for it, and didn't include it to support the decision that it made, which I consider to be kind of a guess. Was the assignment itself ever made part of the record? Not to my knowledge. I haven't seen it. That's an assumption that was made by the parties in the court as far as I can tell. Are there any other questions? Do you know when the assignment happened? Sometime between the time when the contract was entered and the time the lawsuit was originally filed. That would be my best guess. Well, Texas with a Z didn't exist when the contract was entered into, so I'm assuming it happened after Texas with a Z was incorporated. That would be my guess as well, Your Honor. Thank you for your consideration. The appellant would appreciate this court vacating the court's orders, remanding the matter to the district court for full consideration after further briefing. Thank you very much. Thank you, counsel. Texas Star Turbines v. Turbine Power Technology will be submitted, and this session of the court is adjourned for today. Thank you, counsel.
judges: WARDLAW, BUMATAY, Schreier